LATHAM & WATKINS LLP
Manuel A. Abascal (Bar No. 171301)
*manny.abascal@lw.com*
Joshua G. Hamilton (Bar No. 199610)
*joshua.hamilton@lw.com*
Lauren C. Barnett (Bar No. 304301)
*lauren.barnett@lw.com*
Chandler S. Howell (Bar No. 325329)
*chandler.howell@lw.com*
10250 Constellation Blvd, Suite 1100
Los Angeles, California 90067
Telephone: +1.424.653.5500
Facsimile: +1.424.653.5501

*Attorneys for Defendant*
*City National Bank*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HENNY, an individual; JASKGOLF, LLC, an Illinois limited liability company; JEFF ASK, an individual; JAMES RYLEY, an individual; and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY NATIONAL BANK, a national banking association and RBC Company,<br><br>Defendant. | Case No. 8:26-cv-01797-CAS-ADS<br><br><u>Class Action</u><br><br>**DEFENDANT CITY NATIONAL BANK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: January 11, 2027<br>Time: 10:00 A.M.<br>Courtroom: 8D<br><br>Hon. Christina A. Snyder |

# TABLE OF CONTENTS


Page

I. INTRODUCTION .... 8

II. STATEMENT OF FACTUAL ALLEGATIONS .... 10

III. ALL CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS .... 11

A. Plaintiffs' Claims Are Facially Time-Barred .... 12

1. Each Claim's Statute of Limitations Is Three Years or Less .... 12

2. Each Claim Accrued No Later Than April 2021 .... 12

B. The Discovery Rule Does Not Save Plaintiffs' Claims .... 13

1. Plaintiffs Have Not Pleaded, And Cannot Plead, Reasonable Diligence .... 14

2. Plaintiffs Were Indisputably On Notice Before July 2023 .... 17

a. Horwitz's and 1inMM's Civil and Criminal Charges .... 18

b. The *Whitmore* Class Action .... 19

c. The Receiver's Public Reports Documenting Her Investigation And Dispute With CNB .... 20

IV. PLAINTIFFS FAIL TO STATE A CLAIM .... 22

A. The Aiding-And-Abetting Claims Fail .... 23

1. Plaintiffs Plead No "Actual Knowledge" .... 23

a. No Actual Knowledge Through Oct. 2017 Inquiry .... 24

b. No Actual Knowledge of Fraudulent Concealment .... 26

2. Plaintiffs Plead No "Substantial Assistance" .... 26

B. The Claim for Receipt of Stolen Property Fails .... 27

V. CONCLUSION .... 28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agape Fam. Worship Ctr., Inc. v. Gridiron*, 2016 WL 633864 (C.D. Cal. Feb. 16, 2016) ........ 14

*Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524 (9th Cir. 2011) ........ 11

*Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013) ........ 12, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 15

*Back Story, LLC v. Amazon.com Servs., Inc.*, 2025 WL 1012304 (C.D. Cal. Jan. 30, 2025) ........ 28

*Beckett v. Bank of Am., N.A.*, 2018 WL 10731132 (C.D. Cal. Feb. 7, 2018) ........ 13, 14

*Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926 (1994) ........ 14

*Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138 (2005) ........ 23, 24, 25

*Chastain v. Howard*, 716 F. Supp. 3d 740 (N.D. Cal. 2024) ........ 11

*Chazen v. Centennial Bank*, 61 Cal. App. 4th 532 (1998) ........ 24

*Corbrus, LLC v. 8th Bridge Capital, Inc.*, 2020 WL 1914899 (C.D. Cal. Apr. 20, 2020) ........ 11

*Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp. 2d 1068 (C.D. Cal. 2007) ........ 13, 15

*Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408 (2006) ........ 20

*Diaz v. Intuit, Inc.*,
2018 WL 2215790 (N.D. Cal. May 15, 2018) ................................23, 24, 26, 27

*Dufour v. Allen*,
2016 WL 7260688 (C.D. Cal. Dec. 13, 2016) ................................................ 13

*Evans v. ZB, N.A.*,
2019 WL 6918278 (E.D. Cal. Dec. 19, 2019)................................................ 22

*Facebook, Inc. v. MaxBounty, Inc.*,
274 F.R.D. 279 (N.D. Cal. 2011) ................................................................ 26

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
238 Cal. App. 4th 200 (2015)...................................................................... 27

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005)..........................................................14, 16, 17, 18

*Fuller v. First Franklin Fin. Corp.*,
216 Cal. App. 4th 955 (2013)...................................................................... 13

*Garamendi v. SDI Vendome S.A.*,
276 F. Supp. 2d 1030 (C.D. Cal. 2003)........................................................ 17

*Grouse River Outfitters Ltd. v. NetSuite, Inc.*,
2016 WL 5930273 (N.D. Cal. Oct. 12, 2016)................................................ 23

*Hart v. Bayview Loan Servicing*,
2016 WL 3921139 (C.D. Cal. July 18, 2016) ................................................ 26

*Hinrichsen v. Bank of Am., N.A.*,
2018 WL 9847741 (S.D. Cal. July 9, 2018).................................................... 14

*Hobaica v. Seypet Resorts, LLC*,
2012 WL 6675129 (C.D. Cal. Dec. 17, 2012), *aff'd*, 593 F. App'x
719 (9th Cir. 2015) ...................................................................................... 28

*Hough v. Carroll*,
2025 WL 1674425 (C.D. Cal. May 5, 2025)............................................ 23, 26

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006)........................................................................ 23

*In re Incomnet, Inc.*,
463 F.3d 1064 (9th Cir. 2006) ... 28

*In re Infonet Servs. Corp. Sec. Litig.*,
310 F. Supp. 2d 1106 (C.D. Cal. 2003) ... 18, 19

*In re Mortg. Fund '08 LLC*,
527 B.R. 351 (N.D. Cal. 2015) ... 27

*Johnson v. Bayerische Hypo-und Vereinsbank, AG*,
2011 WL 13220748 (C.D. Cal. Sep. 13, 2011) ... 16

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ... 13, 17

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ... 25

*Kreek v. Wells Fargo & Co.*,
652 F. Supp. 2d 1053 (N.D. Cal. 2009) ... 19, 20

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*,
48 Cal. App. 5th 952 (2020) ... 25

*Litson-Gruenber v. JPMorgan Chase & Co.*,
2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) ... 26

*May v. Google LLC*,
2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ... 12, 28

*McFall v. Stacy & Witbeck, Inc.*,
2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) ... 14

*Nat'l Specialty Pharmacy LLC v. Sana*,
2025 WL 2608131 (D. Nev. Aug. 25, 2025) ... 23

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999) ... 12, 13, 18, 21

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
133 Cal. App. 4th 658 (2005) ... 17

*Philbert v. Shulkin*,
2018 WL 1940447 (C.D. Cal. Jan. 22, 2018) ... 11

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) ........ 28

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
509 F. Supp. 3d 1154 (N.D. Cal. 2020) ........ 24

*Schneidereit v. San Luis Cap., Inc.*,
2013 WL 12137837 (C.D. Cal. Jan. 16, 2013) ........ 16

*SEC v. Horwitz*,
2023 WL 11694914 (C.D. Cal. Aug. 11, 2023) ........ 8, 16

*Siry Inv., L.P. v. Farkhondehpour*,
13 Cal. 5th 333 (2022) ........ 28

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........ 19

*Supriyanto v. Bank of N.Y. Mellon*,
2022 WL 1843132 (C.D. Cal. Apr. 4, 2022) ........ 18

*Tim Cross, LLC v. Associated Adjusters Network, Inc.*,
2023 WL 9005635 (C.D. Cal. Nov. 30, 2023) ........ 28

*Tu Le v. Prestige Cmty. Credit Union*,
2023 WL 9689133 (C.D. Cal. Nov. 6, 2023), *aff'd*, 2025 WL 1554413 (9th Cir. June 2, 2025) ........ 12

*Vaca v. Wachovia Mortg. Corp.*,
198 Cal. App. 4th 737 (2011) ........ 12

*Vernon v. State of California*,
116 Cal. App. 4th 114 (2004) ........ 27

*Viera v. Bank of Am., N.A.*,
2015 WL 12752882 (C.D. Cal. Oct. 28, 2015) ........ 13

*Vives v. City Nat'l Bank*,
2024 WL 3588525 (C.D. Cal. July 25, 2024) ........ 16

*WA Sw. 2, LLC v. First Am. Title Ins. Co.*,
240 Cal. App. 4th 148 (2015) .......... 16

*Whitmore v. Horwitz*,
No. 21-cv-03393 (C.D. Cal.) .......... 9, 19

*Wilber v. Bank of Am., N.A.*,
2015 WL 13919430 (C.D. Cal. Mar. 30, 2015) .......... 12, 15

*Winkler v. McCloskey*,
83 F.4th 720 (9th Cir. 2023) .......... 16

*Zidell v. East West Bank*,
2025 WL 4231628 (C.D. Cal. Dec. 15, 2025) .......... 23

**STATUTES**

Cal. Code Civ. Proc.
§ 338(d) .......... 12, 22
§ 340(a) .......... 12

Cal. Pen. Code
§ 496 .......... 9, 11, 27, 28

# I. INTRODUCTION

This case is a textbook example of a time-barred lawsuit that should be dismissed at the pleading stage. Since Zachary Horwitz was arrested in April 2021 for running what the media dubbed "the largest Ponzi scheme in Hollywood history," this Court and others nationwide have presided over criminal and civil proceedings involving Horwitz and his wholly controlled company, 1inMM Capital, LLC ("1inMM"). Importantly, public court filings and media reports from April 2021 identified Horwitz and 1inMM as customers of City National Bank ("CNB"). Indeed, Plaintiffs—investors in 1inMM—admit that no later than April 2021, they and the public knew "Horwitz had operated a Ponzi scheme, maintained accounts at CNB, moved investor funds through those accounts, used a CNB personal account for personal spending, and maintained a CNB line of credit." ¶ 56.[1]

Plaintiffs' claims alleging that CNB aided Horwitz's fraud are all subject to a three-year statute of limitations, yet Plaintiffs did not file this Complaint until July 9, 2026—over five years after being put on notice of their claims. The Complaint must therefore be dismissed unless Plaintiffs can show they could not have suspected a cause of action against CNB before July 9, 2023. They cannot. Plaintiffs' own admissions, judicially noticeable facts, and materials incorporated by reference confirm that their claims are untimely and cannot be saved.

The overwhelming public facts confirming that Plaintiffs were on notice of potential claims against CNB include:

- On April 5, 2021, the Securities and Exchange Commission sued Horwitz and 1inMM in this Court, describing the flow of investor funds through numerous CNB accounts, and seeking to freeze those accounts as products of Horwitz's fraud.[2]

[1] All "¶" references are to paragraphs in Plaintiffs' Complaint.
[2] *SEC v. Horwitz*, No. 21-cv-02927 (C.D. Cal.) ("SEC Action").

- On April 20, 2021, other 1inMM investors filed a putative class action in this Court, asserting a claim for aiding-and-abetting fraud against CNB.[3] ¶ 59. Those plaintiffs publicly dismissed all claims against CNB on July 23, 2021.
- In 2022 and early 2023, the equity Receiver—appointed by this Court in the SEC Action to stand in the shoes of 1inMM—publicly reported that she was investigating claims against CNB and then subpoenaed CNB, prompting significant motion practice.

Plaintiffs do not dispute this timeline. But attempting to escape the statute of limitations, they plead that they did not "know the bank-specific facts showing CNB's own actionable conduct" until February 16, 2024, when the Receiver sued CNB in a proceeding titled *Vives v. City National Bank*, No. 24-cv-01317 (C.D. Cal.). ¶ 17. California law, however, does not allow plaintiffs on notice of a claim to sit idly by, relying on another party to investigate and file suit. Plaintiffs were aware of sufficient information to put them on notice, yet they exercised no diligence, and filed this recycled action only after the Receiver's case against CNB was dismissed with prejudice. The Court should accordingly dismiss Plaintiffs' claims as time-barred without reaching the merits.

But even on the merits, each claim would fail. For their aiding-and-abetting fraud and fraudulent concealment claims, Plaintiffs must (but fail to) plead that CNB had "actual knowledge" of Horwitz and 1inMM's fraud on investors and substantially assisted that fraud. Plaintiffs' claim under Penal Code § 496 should be dismissed for a similar failure to plead that CNB actually knew it was receiving stolen investor funds.

Because Plaintiffs cannot plead facts to save their time-barred and defective claims, the Court should dismiss the Complaint without leave to amend.

---

[3] *Whitmore v. Horwitz*, No. 21-cv-03393 (C.D. Cal.) ("*Whitmore* Action").

## II. STATEMENT OF FACTUAL ALLEGATIONS[4]

The underlying facts of Horwitz's Ponzi scheme are well known to this Court and have been widely disseminated in court filings and media reports. Between 2013 and 2019, Horwitz and 1inMM solicited more than $710 million from investors, claiming the funds would be used to "acquire film-distribution rights from filmmakers or rights owners" and then "resold or licensed … at a profit to major entertainment companies, including HBO, Netflix, and Sony." ¶¶ 3, 80. On April 5, 2021, the Department of Justice criminally charged Horwitz, and the SEC sued him and 1inMM, revealing that 1inMM had no legitimate business and operated as a Ponzi scheme. RJN Exs. A–B.[5] Horwitz "pleaded guilty to securities fraud, received a twenty-year prison sentence, and was ordered to pay" significant restitution. ¶ 90.

On April 20, 2021, investors in 1inMM sued CNB, alleging that CNB aided and abetted Horwitz's fraud. RJN Ex. N. On July 23, 2021, the plaintiffs in the *Whitmore* Action filed a notice of dismissal without prejudice of all claims against CNB. Ex. 18. As alleged in the SEC Action and the *Whitmore* Action—and parroted in this Complaint—Horwitz and 1inMM maintained bank accounts and a line of credit at CNB from 2013 through his arrest in April 2021. ¶¶ 6, 33; *see* RJN Ex. B ¶¶ 59–60; RJN Ex. N; ¶¶ 3, 11, 32, 34, 40–56.

The Complaint theorizes that CNB learned of Horwitz's fraud in October 2017, when CNB allegedly inquired about "large, round-number, circular transfers" between 1inMM and JJMT Capital, the largest aggregator of investor funds. ¶¶ 10, 38, 186. Plaintiffs acknowledge that Horwitz lied to CNB about these wires—claiming that JJMT Capital financed film deals and 1inMM repaid those loans after the transactions—but allege that CNB's records contradicted these lies because they

---

[4] For purposes of this Motion and without admitting their veracity or relevance, unless otherwise noted as contradicted by matters subject to judicial notice or incorporated by reference, the allegations in the Complaint are taken as true.

[5] All RJN Exhibits refer to exhibits to the concurrently filed Declaration of Chandler S. Howell In Support Of CNB's Request For Judicial Notice and Incorporation By Reference.

"reflected no purchases of film rights from movie producers, no revenue from HBO, Netflix, Sony, or any other legitimate industry counterparty." ¶ 12. From this, Plaintiffs allege that "[n]o later than October 24, 2017, CNB had actual knowledge that Horwitz was running a Ponzi scheme," ¶ 13, and that CNB thereafter "substantially assisted" the fraud by "maintaining the accounts," "processing investor-related wires," "extending and renewing credit," and "accommodating overdrafts." ¶¶ 15, 259.

Plaintiffs allege they are "Net Loser" investors in 1inMM, meaning they lost more money than they received in returns. ¶¶ 22–28, 95. They bring this action on behalf of a proposed class of persons who became Net Losers after October 2017. ¶¶ 96, 231. The Complaint asserts three causes of action under California law: (1) aiding-and-abetting fraud; (2) aiding-and-abetting fraudulent concealment; and (3) violation of California Penal Code § 496 for receipt of stolen property. ¶¶ 254–92.

## III. ALL CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs allege only state law claims; thus "[s]tate statutes of limitation and associated tolling rules apply . . . in federal court because they are substantive rather than procedural." *Chastain v. Howard*, 716 F. Supp. 3d 740, 747 (N.D. Cal. 2024); *see Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).

A "statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." *Philbert v. Shulkin*, 2018 WL 1940447, at *5 (C.D. Cal. Jan. 22, 2018) (Snyder, J.) (citation omitted) (dismissing time-barred claims); *see also Corbrus, LLC v. 8th Bridge Capital, Inc.*, 2020 WL 1914899, at *7 & n.4 (C.D. Cal. Apr. 20, 2020) (Snyder, J.). In assessing timeliness, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### A. Plaintiffs' Claims Are Facially Time-Barred

#### 1. Each Claim's Statute of Limitations Is Three Years or Less

Plaintiffs' aiding-and-abetting fraud and aiding-and-abetting fraudulent-concealment claims are governed by the three-year period in California Code of Civil Procedure ("CCP") Section 338(d) for fraud because the "statute of limitations for aiding and abetting is the same as the statute of limitations for an underlying wrongful act." *Wilber v. Bank of Am., N.A.*, 2015 WL 13919430, at *3 (C.D. Cal. Mar. 30, 2015); *see Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 744 n.4 (2011) ("The limitations period for fraud is three years.").

Plaintiffs' third claim—for treble damages under California Penal Code section 496(c)—is subject to CCP Section 340(a)'s one-year period because statutes authorizing recovery beyond actual losses are penal in nature. *See Tu Le v. Prestige Cmty. Credit Union*, 2023 WL 9689133, at *9 (C.D. Cal. Nov. 6, 2023) ("[T]he Court finds that a one-year statute of limitations period applies to the [§ 496(c)] claim for treble damages."), *aff'd*, 2025 WL 1554413 (9th Cir. June 2, 2025); *May v. Google LLC*, 2024 WL 4681604, at *9 (N.D. Cal. Nov. 4, 2024) (same). To the extent the claim seeks compensatory damages, CCP Section 338(d)'s three-year period applies. *See Tu Le*, 2023 WL 9689133, at *9; *May*, 2024 WL 4681604, at *9.

#### 2. Each Claim Accrued No Later Than April 2021

"[O]rdinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action"—"those elements being wrongdoing, harm, and causation." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013) (citation modified); *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (limitations period begins "when the cause of action is complete with all of its elements"). On the face of the Complaint, every element of each claim was complete no later than April 2021: the Ponzi scheme "collaps[ed] in April 2021," ¶ 80; Plaintiffs had already suffered the losses they now seek to recover, ¶ 55; and the latest conduct attributed to CNB occurred in 2020, ¶¶ 217–19, 229.

Each claim therefore had to be filed by April 2024 at the latest. Plaintiffs did not file until July 9, 2026—more than two years too late. Their claims are thus facially untimely.

**B. <u>The Discovery Rule Does Not Save Plaintiffs' Claims</u>**

Where, as here, "a pleading is untimely on its face, it becomes the plaintiff's burden 'even at the pleading stage' to establish an exception to the limitations period." *Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955, 962 (2013) (quoting *Aryeh*, 55 Cal. 4th at 1197); *accord Viera v. Bank of Am., N.A.*, 2015 WL 12752882, at *4 (C.D. Cal. Oct. 28, 2015).

Plaintiffs rely on a single theory: that their "delayed discovery of CNB's role" tolled the limitations periods. ¶¶ 55–78. "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988); *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp. 2d 1068, 1092 (C.D. Cal. 2007) (same). As the California Supreme Court explained:

> [A] plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him, 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.' . . . He has reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry; he need not know the specific facts necessary to establish the cause of action . . . .

*Norgart*, 21 Cal. 4th at 397–98 (cleaned up); *Beckett v. Bank of Am., N.A.*, 2018 WL 10731132, at *4 (C.D. Cal. Feb. 7, 2018). Critically, the discovery rule turns on knowledge of the *injury*, not the *wrongdoer*. "[F]ailure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action." *Dufour v. Allen*, 2016 WL 7260688, at *4 (C.D. Cal. Dec. 13, 2016) (quoting *Norgart*, 21 Cal. 4th at 397–98). This rule rests on the "commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations

period . . . normally affords sufficient opportunity to discover the identity of all the wrongdoers." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994). The same principle applies to aiding-and-abetting claims. *See McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *4 (N.D. Cal. Oct. 26, 2016) (dismissing untimely complaint where plaintiff learned of aider and abettor's role only through documents produced in later litigation).

**1. Plaintiffs Have Not Pleaded, And Cannot Plead, Reasonable Diligence**

"[T]o employ the discovery rule to delay accrual of a cause of action, a plaintiff must demonstrate that he or she conducted a reasonable investigation of all potential causes of his or her injury." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 811 (2005); *Beckett*, 2018 WL 10731132, at *4. At the pleading stage, "the court places the burden on the plaintiff to 'show diligence'" through ***facts***; "conclusory allegations" will not suffice. *Fox*, 35 Cal. 4th at 808; *Hinrichsen v. Bank of Am., N.A.*, 2018 WL 9847741, at *2 (S.D. Cal. July 9, 2018) (plaintiff "must plead facts demonstrating that he was not negligent in failing to make the discovery sooner" (citation omitted)); *Agape Fam. Worship Ctr., Inc. v. Gridiron*, 2016 WL 633864, at *5 (C.D. Cal. Feb. 16, 2016) (dismissing complaint where plaintiff "fail[ed] to allege facts showing any diligence").

The Complaint not only fails to allege reasonable diligence—it concedes Plaintiffs were not diligent. Across their eighty-seven-page Complaint, Plaintiffs never allege that any of them took a single step a diligent investor would take after learning he had been defrauded. They do not allege that anyone searched publicly filed court records, even though the SEC and a putative investor class in the *Whitmore* Action filed pleadings in April 2021 that extensively referenced CNB. ¶¶ 59–60; RJN Exs. B, N. They do not allege that anyone submitted a FOIA request to the SEC, the Department of Justice, or the Receiver who advised investors she

possessed bank records. They do not allege that any Plaintiff consulted counsel about a potential claim against CNB between April 2021 and February 2024.

The Complaint's only attempt to address diligence is to claim that investigation would have been futile: "[e]ven if Plaintiffs had investigated CNB in 2021 after learning of Horwitz's fraud or after *Whitmore* was filed, a reasonable investigation would not have revealed the non-public bank records disclosed by the Receiver on which this action depends." ¶ 78.[6] The conditional "[e]ven if Plaintiffs ***had*** investigated" is an admission they did nothing. Plaintiffs cannot satisfy their pleading obligation by hypothesizing about an inquiry they never made. Predicting what an investigation would have yielded is a speculative conclusion entitled to no weight. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Deirmenjian*, 526 F. Supp. 2d at 1093 (allegation that circumstances "made it impossible" to discover the facts "does not adequately plead delayed discovery," absent "facts that would support a finding of reasonable diligence").

*Wilber v. Bank of America, N.A.* forecloses Plaintiffs' theory on nearly identical facts. There, investors defrauded by a Ponzi scheme sued the bank for aiding and abetting fraud, but the court found their claim untimely. The court rejected the investors' argument that they "didn't actually know, nor could they have known, of [the bank's] wrongful acts before [the bank's] records were subpoenaed." 2015 WL 13919430, at *3–4. Plaintiffs' claim that they had "no right to inspect CNB's internal files" and "no ability to compel pre-suit discovery from CNB," ¶ 73, fails under the same logic. Aiding-and-abetting liability is derivative of the primary tort: the wrong is Horwitz's fraud, the injury is Plaintiffs' investment losses, and CNB's alleged assistance is simply a theory for that same liability—which Plaintiffs concede they discovered in 2021. *See Wilber*, 2015 WL 13919430, at *3–4. *Fox* is

---

[6] Even this allegation rests on the incorrect assumption that Plaintiffs could not file a complaint before someone disclosed CNB's "non-public bank records." *See infra* § III.B.2.

also on point. There, the plaintiff similarly claimed there was no way "through which her reasonable diligence would have revealed, or through which she would have suspected" the true cause of her injury within the limitations period. The California Supreme Court rejected that allegation "because it failed to allege specific facts supporting" her futility claim. 35 Cal. 4th at 811; *see id.* at 813.

Stripped of the conclusory futility allegation, Plaintiffs' actual excuse is that they waited for someone else to investigate. Plaintiff Ask admits he "relied on the investigative powers of the federal-court-appointed Receiver to identify potential defendants, and he believed that Receiver Vives was working diligently to identify potential defendants." ¶ 75. But reliance on a third party's investigation is not diligence; it is the impermissible delegation of a duty personal to each plaintiff. *Johnson v. Bayerische Hypo-und Vereinsbank, AG*, 2011 WL 13220748, at *6–7 (C.D. Cal. Sep. 13, 2011) (dismissing untimely fraud claims where investors waited for testimony in related criminal proceeding rather than investigating).

That reliance is also misplaced. As a matter of law—and as this Court has recognized—"the Receiver 'stands in the shoes' of the 1inMM Entities," not the investors, and Plaintiffs do not allege any fiduciary relationship with her.[7] *Vives v. City Nat'l Bank*, 2024 WL 3588525, at *5 (C.D. Cal. July 25, 2024) (citing *Winkler v. McCloskey*, 83 F.4th 720, 727 (9th Cir. 2023)); *SEC v. Horwitz*, 2023 WL 11694914, at *4 (C.D. Cal. Aug. 11, 2023) ("[T]he equity receiver in this case stands in the shoes of the receivership entities—not of their creditors."). Plaintiffs themselves acknowledge that Ms. Vives was appointed to marshal and investigate the affairs of the 1inMM Entities, *see* ¶¶ 34, 70—not to act as a private investigator

---

[7] Even where a plaintiff stands in a fiduciary relationship with the party relied upon, that "does not mean that plaintiffs ha[ve] no duty of inquiry." *WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015). California courts consistently refuse to let plaintiffs convert reliance on a fiduciary into a limitations shield. *See Schneidereit v. San Luis Cap., Inc.*, 2013 WL 12137837, at *7 (C.D. Cal. Jan. 16, 2013) (despite fiduciary relationship, "Plaintiffs are still charged with exercising reasonable diligence").

and claims counsel for Plaintiffs. ¶¶ 34–36.

Because Plaintiffs admittedly knew of their injury no later than April 2021 yet did not investigate their potential claims with reasonable diligence, they cannot invoke the discovery rule, and their claims are time-barred.

**2. Plaintiffs Were Indisputably On Notice Before July 2023**

Plaintiffs' delayed-discovery theory independently fails because the Complaint and judicially noticeable facts show they were on at least inquiry notice of their claims long before July 9, 2023. As discussed above, Plaintiffs concede learning of the Ponzi scheme and their investment losses "no later than April 2021," ¶ 55, and that in 2021 they knew the fraud ran through CNB accounts, ¶ 56. All that Plaintiffs claim they lacked was additional evidentiary detail—"the bank-specific facts showing CNB's own actionable conduct," ¶ 17, which they allegedly could not obtain because they were not "bank insiders." ¶¶ 71, 73.

But "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." *Jolly*, 44 Cal. 3d at 1111; *Fox*, 35 Cal. 4th at 808; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 685 (2005) ("[Investors'] ignorance of specific information contained in [files of law firm accused of aiding a Ponzi scheme] . . . did not toll the running of the statute."). Plaintiffs' position that they must wait for "CNB's internal files," ¶ 73, has no basis in law: "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1111.

Even on Plaintiffs' premise—that discovery of their claims required details about CNB's "role," ¶ 55—Plaintiffs were on notice well before July 2023. "[T]he discovery rule does not necessarily delay accrual until completion of a plaintiff's investigation but only until the plaintiff '***has reason to suspect' wrongdoing—that is, until the plaintiff has 'notice or information of circumstances to put a reasonable person on inquiry***.'" *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d

1030, 1040 (C.D. Cal. 2003) (emphasis added) (quoting *Norgart*, 21 Cal. 4th at 397). A plaintiff is "charged with knowledge of the information that would have been revealed" by a reasonably diligent investigation. *Fox*, 35 Cal. 4th at 808; *Supriyanto v. Bank of N.Y. Mellon*, 2022 WL 1843132, at *5 (C.D. Cal. Apr. 4, 2022). The measure of notice is thus what a reasonably diligent investor in Plaintiffs' position could have learned from public information—an objective test under which "courts can impute knowledge of public information without inquiring into when, or whether, individual [plaintiffs] actually knew of the information." *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1114 n.7 (C.D. Cal. 2003) (citation omitted).

The timeline below removes any doubt that Plaintiffs had inquiry notice of their claims well before July 9, 2023.

**a. Horwitz's and 1inMM's Civil and Criminal Charges**

On April 5, 2021, Horwitz was charged with wire fraud. RJN Ex. A. The criminal complaint described the scheme's mechanics and identified the CNB accounts through which Horwitz and 1inMM moved funds. *Id.* The SEC's civil complaint and supporting declaration, filed the same day, identified nine Horwitz-controlled CNB accounts by name and partial number, traced investor money through them, and described how it was fraudulently used for personal purposes. RJN Ex. B. CNB also provided a declaration confirming production of account statements, checks, deposits, wires, and loan documents spanning 2013 through 2021. Ex. 2 ¶¶ 4, 19–32 & Ex. 1. Six weeks later, CNB filed a public pleading disclosing that Horwitz opened a secured personal line of credit at CNB around January 2013, borrowed nearly all the available amount, renewed the line annually, and still owed over a million dollars in principal and interest. Ex. 19; *see* ¶¶ 56, 63.

**b. The *Whitmore* Class Action**

On April 20, 2021, four 1inMM investors sued CNB on behalf of a class of 1inMM investors in the *Whitmore* Action. RJN Ex. N. The *Whitmore* plaintiffs alleged that CNB "knew of and substantially assisted Horwitz's fraudulent scheme and is therefore jointly liable to the class of 1inMM investors." *Id.* ¶¶ 3, 86. *Whitmore* further alleged that CNB knew what legitimate film-finance activity should look like and that "the only business model consistent with Horwitz's banking practices was the operation of a Ponzi scheme." *Id.* ¶¶ 48, 50, 85(g). Count 2 asserted aiding-and-abetting fraud against CNB and enumerated nine categories of substantial assistance, including "[c]arrying out improper and highly suspicious financial transactions such as the unexplained transfers between 1inMM's business accounts and Horwitz's personal accounts" and extending a personal line of credit amid Ponzi-like activity. *Id.* ¶ 85(a)–(i); *see id.* ¶ 47.

*Whitmore* removes any doubt that Plaintiffs were on inquiry notice. A previously filed complaint asserting substantially the same wrongdoing against the same defendant is the paradigm case for inquiry notice. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1140 (C.D. Cal. 2011); *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1059–60 (N.D. Cal. 2009); *Infonet*, 310 F. Supp. 2d at 1113–14. And this action and *Whitmore* are parallel in every material respect. Plaintiffs' class is a subset of the *Whitmore* class. *Compare* RJN Ex. N ¶ 72, *with* ¶ 231. The harm is the same: net investment losses in the Horwitz Ponzi scheme. The alleged conduct is the same: CNB's maintenance of the Horwitz and 1inMM accounts, its processing of commingled and round-dollar transfers, and its extension and renewal of Horwitz's personal line of credit. *Compare* RJN Ex. N ¶¶ 3, 47–50, 85, *with* ¶¶ 212–21, 259–60. And the main cause of action is the same: aiding-and-abetting fraud. *Compare* RJN Ex. N ¶¶ 84–86, *with* ¶¶ 254–64. The Complaint's attempts to distinguish *Whitmore*, ¶¶ 59–60, cannot erase these core

similarities.[8] *See Kreek*, 652 F. Supp. 2d at 1060 ("The fact that other similarly situated plaintiffs were able to file an identical action . . . affirms this order's finding that plaintiffs were on inquiry notice more than two years before the complaint was filed.").

Even though Plaintiffs are charged with constructive notice, *Whitmore*'s contemporaneous media coverage made it impossible to miss. In April and May 2021, news reports and law-firm alerts identified CNB by name, described the pending claims, and solicited affected 1inMM investors. *See, e.g.*, RJN Ex. R ("City National held all of Horwitz's business and personal accounts, and allegedly knew about the fraud from a series of red flags associated with those accounts, including a series of transfers of money from investor accounts to Horwitz's personal account."); Ex. T ("City National had notice of Horwitz's fraud from a series of red flags associated with his personal and 1inMM accounts at the bank."); Ex. U (*Whitmore* "highlights numerous red flags in Horwitz's financial activity—co-mingling of funds, pass-through activity in the accounts, and round dollar transfers—that occurred under City National's watch"); *see also* RJN Exs. S, V, W (similar). Widely disseminated press coverage alone can trigger the duty to investigate. *See Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 428 (2006) ("Storm warnings may be found whenever there are any financial, legal, or other data, such as public disclosures in the media . . . that would tend to alert a reasonable person to the likelihood of fraud." (citation omitted)).

**c. The Receiver's Public Reports Documenting Her Investigation And Dispute With CNB**

Since May 2022, the Receiver has filed quarterly public reports in the SEC Action detailing her investigation and placing Plaintiffs on notice that she was examining CNB's financing relationship with Horwitz. The Complaint concedes

---

[8] Plaintiffs did not object to CNB's notice that this case should be related to the *Whitmore* Action. ECF 17–18.

these reports were "filed in court" and accompanied by "notices sent to creditors" and that Plaintiff Ask specifically reviewed them. ¶ 75. The public record of these reports provided, as a matter of law, "notice or information of circumstances" sufficient to put any reasonable investor on notice. *Norgart*, 21 Cal. 4th at 397–98.

August 10, 2022: The Receiver's Report described Horwitz's use of the CNB line of credit to provide liquidity for the scheme and reported that more than $209 million in investor-derived funds flowed through Horwitz's personal CNB account. RJN Ex. D at 2–3, 10.

November 10, 2022: The Receiver's Report disclosed that her forensic accounting team had reconstructed a scheme comprising "over $2 billion in transactions" across eight years by reviewing "over 770 bank statements encompassing over 18,600 transactions" at CNB. *Id.* Ex. E at 5.

January–April 2023: By early 2023, public filings in the SEC Action disclosed that counsel for the Receiver asked CNB to enter a tolling agreement "for the Receiver to bring any claims against CNB" and preserve documents. *Id.* Ex. G ¶ 11 & Ex. 6. The Receiver then served CNB with a subpoena seeking, among other things, CNB's policies, procedures, practices, training, and internal communications. *Id.* ¶ 12. On March 15, 2023, CNB moved to quash, publicly describing the subpoena as "unauthorized pre-filing discovery for use in a potential lawsuit against CNB." *Id.* Ex. G at 2. The Receiver opposed CNB's motion, *id.* Ex. H, and submitted a supporting declaration noting, among other details, that $121 million was transferred from 1inMM business accounts to Horwitz's personal CNB account in roughly 366 transfers, *id.* Ex. I ¶¶ 3–5. Similar allegations appear in the Complaint. *See, e.g.*, ¶ 225. On April 10, 2023, CNB responded with a declaration disclosing that it had produced account statements, checks, wire information, deposit slips, account-opening materials, signature cards, the personal credit-line agreement, and emails to the Receiver and the SEC. RJN Ex. L.

Revealing concern about the statute of limitations, the Complaint takes the unusual step of citing case law, relying on *Evans v. ZB, N.A.*, 2019 WL 6918278 (E.D. Cal. Dec. 19, 2019). *See* ¶ 55 & Ex. 16. *Evans*, however, does not help Plaintiffs. *Evans* applied the same framework to a materially different record, in which nothing then available implicated the bank: the fraudster's guilty plea "describe[d] only his and [another company's] fraud, not [the bank's] involvement in the fraud"; the victim impact statements contained "no suggestion . . . that [the bank] could be a willful participant in [the] fraudulent scheme"; and the one public pleading the bank identified alleged nothing beyond the fact "that [the bank] did anything other than extend credit to" the company. *Id.* at *4–5, *7. Every material fact is reversed here. Where materials preceding the complaint in *Evans* "did not allege fraud," 2019 WL 6918278, at *5, *Whitmore* "named CNB as an additional defendant[,] and asserted aiding-and-abetting claims against the bank," ¶ 59. And where the *Evans* guilty plea described only the fraudster's conduct, the Receiver's and government's filings here identified CNB's accounts by number and traced investor money through them.

Plaintiffs had actual or constructive notice of CNB's alleged role no later than April 2021—and unquestionably no later than the Receiver's public dispute with CNB in the spring of 2023. On either date, the three-year period under CCP Section 338(d) expired before this action was filed on July 9, 2026.[9]

## IV. PLAINTIFFS FAIL TO STATE A CLAIM

While the Court need not address Plaintiffs' substantive pleading deficiencies if it dismisses the Complaint for untimeliness, Plaintiffs also fail to state a viable cause of action under Rule 12(b)(6). Namely, the Complaint alleges no factual support for its claim that CNB "knowingly assist[ed] Zachary Horwitz and 1inMM

---

[9] Even under Plaintiffs' theory that the statute of limitations "began to run on February 16, 2024," ¶ 56, their Penal Code § 496(c) claim seeking treble damages for CNB's alleged receipt of stolen property, subject to a one-year statute of limitations, is time-barred.

Capital" in any fraudulent activity. ¶ 1. Plaintiffs' claims especially fail under Rule 9(b)'s heightened pleading standard that applies to each claim. *See Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *5 n.5 (N.D. Cal. May 15, 2018) (aiding-and-abetting fraud); *Nat'l Specialty Pharmacy LLC v. Sana*, 2025 WL 2608131, at *3 (D. Nev. Aug. 25, 2025) (aiding-and-abetting fraudulent concealment); *Grouse River Outfitters Ltd. v. NetSuite, Inc.*, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016) (Cal. Penal Code § 496 claim).

### A. The Aiding-And-Abetting Claims Fail

#### 1. Plaintiffs Plead No "Actual Knowledge"

Under California law, "liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong"—Horwitz's scheme to defraud investors. ¶¶ 1, 255; *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005). Indeed, while "actual knowledge" of the underlying fraud may be averred generally, a plaintiff must plead sufficient facts to make it plausible that the defendant in question had actual knowledge of the "*specific* fraud perpetrated by the primary tortfeasor." *Hough v. Carroll*, 2025 WL 1674425, at *6–8 (C.D. Cal. May 5, 2025) (emphasis in original) (citing *Casey*, 127 Cal. App. 4th at 1148 and distinguishing *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006)).

*Casey* is the seminal California case for the high standard applied to aiding-and-abetting claims against a bank, requiring a "conscious decision" to help facilitate another's tortious activity for the purpose of assisting another in performing a wrongful act. *Casey*, 127 Cal. App. 4th at 1146. "Of course, a defendant can only aid and abet another's tort if the defendant knows what 'that tort' is." *Id.*; *Zidell v. East West Bank*, 2025 WL 4231628, at *3 (C.D. Cal. Dec. 15, 2025) (requiring affirmative knowledge of the specific fraud). Allegations that the bank "knew *something* fishy was going on" with the accounts are not enough. *Casey*, 127 Cal. App. 4th at 1149 (emphasis in original). Despite allegations that the banks knew individuals had used forged checks and carried cash out of the bank in duffel bags,

*Casey* held that "the complaint fails to establish that the banks had *actual knowledge of the primary violation in which they purportedly participated*." *Id.* at 1148–49 (emphasis added).

**a. No Actual Knowledge Through Oct. 2017 Inquiry**

The Complaint asserts that CNB gained "actual knowledge" of the fraud "no later than October 2017," when CNB investigated "large, round-number transfers" between 1inMM and JJMT Capital, "Horwitz's largest source of investor funds." ¶¶ 96, 184–87, 257. Plaintiffs allege that CNB asked Horwitz for an explanation, and that Horwitz lied to CNB by claiming JJMT was financing film deals in the form of loans that Horwitz was required to repay. ¶¶ 187–88. From this exchange, Plaintiffs assert that CNB "acquired actual knowledge of the Horwitz and 1inMM Ponzi scheme" because "CNB's own records" "flatly contradicted Horwitz's explanation." ¶¶ 184, 188.

This theory of "actual knowledge" is plainly insufficient. Though Plaintiffs disclaim it, their argument amounts to the contention that CNB *should have* known Horwitz was running a Ponzi scheme from CNB's October 2017 inquiries. ¶¶ 13, 132–46, 197–211. But alleging that a bank "should have become aware of the specific wrongful conduct" is insufficient to show the required "actual knowledge." *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165–66 (N.D. Cal. 2020); *see Diaz*, 2018 WL 2215790, at *7 (similar). CNB did not owe Plaintiffs any duties of investigation, monitoring, or disclosure. *See Casey*, 127 Cal. App. 4th at 1149–50; *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537, 541 (1998) (bank has no duty to "police" accounts and "incurs no liability by failing to" close them).[10]

The Court-appointed Referee's analysis in dismissing the Receiver's aiding-and-abetting claim is instructive. Although the Referee relied in part on legal

---

[10] The Complaint's extended detour regarding CNB's alleged "points of visibility into the scheme," *see* ¶¶ 97–183, 197–211, 222–29, does not allege actual knowledge of fraud.

deficiencies unique to the Receiver, ¶ 35, the Referee also rejected substantially similar allegations to show CNB's "actual knowledge." Specifically, the Referee concluded that "high volume, high value, and high frequency round trip fund transfers"—just as Plaintiffs assert here, including the Receiver's same allegations relating to Horwitz's false explanation of the October 2017 wires, *see* RJN Ex. Q at 27—"cannot satisfy the actual knowledge element of an aiding and abetting claim." RJN Ex. Q at 24 (citing *Casey*, 127 Cal. App. 4th at 1153; *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 961–62 (2020)). Similarly, the Referee noted that the Receiver's complaint "alleges facts that show Horwitz keeping CNB in the dark" and that Horwitz "lied to CNB." RJN Ex. Q at 27. The Complaint here likewise alleges that Horwitz deceived CNB in response to CNB's October 2017 inquiries, ¶ 187, along with ample other examples of Horwitz making misrepresentations to CNB that the Referee also considered. As the Referee concluded, such allegations contradict the notion "that CNB had actual knowledge of the tort being committed." RJN Ex. Q at 27.

Plaintiffs attach the Receiver's complaint as Exhibit 1, admit they based their Complaint on the "facts" discovered by the Receiver and the "records disclosed by the Receiver on which this action depends," and admit that "[a]ll" of the accounting allegations were based on work done by the Receiver. ¶¶ 52, 78; Ex. 1. Plaintiffs cannot incorporate the Receiver's complaint and investigation only insofar as they believe it helps their theory while asking the Court to disregard the allegations of Horwitz's lies that show their claims lack merit. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

**b. No Actual Knowledge of Fraudulent Concealment**

For the reasons discussed above, Plaintiffs fail to plead that CNB had actual knowledge of Horwitz's "fraudulent concealment" of material information from investors. But their aiding-and-abetting fraudulent concealment claim additionally fails because the Complaint does not allege that CNB ever saw an investor-facing document, communicated with an investor, or learned what Horwitz was telling investors. Bald allegations that CNB "knew what investors were being told," ¶ 189, "knew that the omitted facts were not being disclosed to investors," ¶ 273, and "was aware of its role in assisting the concealment," ¶ 274, are exactly the sort of conclusory assertions that must be rejected under Rules 9(b) and 12(b)(6) in the context of aiding and abetting a Ponzi scheme. *See Litson-Gruenber v. JPMorgan Chase & Co.*, 2009 WL 4884426, at *3 (N.D. Tex. Dec. 16, 2009) (applying California law and concluding that "Plaintiff fails to allege that Defendant knew the Ponzi defendants were making false representations" to investors); *Hart v. Bayview Loan Servicing*, 2016 WL 3921139, at *7 (C.D. Cal. July 18, 2016) (Snyder, J.) (rejecting "conclusory and vague allegations" about what "Defendants were aware of").

**2. Plaintiffs Plead No "Substantial Assistance"**

"Substantial assistance" sufficient to show aiding and abetting a fraud "requires a 'significant and active, as well as a knowing participation in the wrong.'" *Diaz*, 2018 WL 2215790, at *8; *see Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011). "While knowledge can be alleged generally, substantial assistance must be pleaded with particularity." *Hough*, 2025 WL 1674425, at *6 (citation omitted).

The Complaint alleges only that CNB engaged in ordinary banking activity: maintaining accounts, processing wires, confirming account balances, renewing the line of credit, and "tolerating overdrafts." ¶¶ 12, 212–21, 259. "Ordinary business transactions" may qualify as "substantial assistance" *only* where the bank actually

knew the "transactions assisted the commission of the specific tort"—which is not adequately alleged here. *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 365 (N.D. Cal. 2015). It is not enough to claim that "but for" CNB's provision of banking services to Horwitz, the fraud may not have continued. *See, e.g.*, ¶¶ 261, 276. Such a theory would be premised on "failure to act allegations," which "are insufficient to establish substantial assistance for purposes of aiding and abetting liability." *Diaz*, 2018 WL 2215790, at *8.

The Referee dismissed similar allegations of "substantial assistance." The Receiver alleged that "(1) ordinary services, (2) allowing transfers, (3) lending activity, (4) allowing overdrafts, and (5) failing to terminate accounts" constituted substantial assistance of Horwitz's fraud against the 1inMM entities. RJN Ex. Q at 25–26. The Referee concluded that these "[c]ustomary banking services … fail to establish that CNB was a substantial factor in bringing about the injury allegedly suffered." *Id.* at 26 (citing *Diaz*, 2018 WL 2215790, at *8; *Vernon v. State of California*, 116 Cal. App. 4th 114, 131 (2004)). The same result should hold here.

**B. The Claim for Receipt of Stolen Property Fails**

Plaintiffs' effort to impose liability on CNB under California Penal Code § 496, a criminal statute, should also be rejected. Section 496 penalizes the knowing receipt of stolen property and creates a private civil right of action for injured plaintiffs. A plaintiff must show (1) that property was stolen, (2) that the defendant received, concealed, or withheld the stolen property, and (3) the defendant knew the property was stolen. *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 213 (2015); CACI No. 1930.

This claim fails because Plaintiffs fail to plead that CNB "received" or "withheld" property as those terms are used in the statute. CNB had no control over Horwitz's deposits at the bank: at all times until his arrest, the funds were payable on demand to Horwitz. As the Referee held in dismissing the Receiver's fraudulent transfer claim, "a bank that merely accepts a deposit of funds and effectuates their

transfer into another account does not have dominion over these funds." RJN Ex. Q at 20 (citing *In re Incomnet, Inc.*, 463 F.3d 1064, 1070 (9th Cir. 2006)).

As discussed above, Plaintiffs do not sufficiently allege that CNB had actual knowledge of Horwitz and 1inMM's fraud generally, much less that CNB knew the specific funds it received and held were proceeds of Horwitz's theft from investors. *See, e.g.*, ¶ 286 (alleging only that CNB received and held "fraud proceeds" but not alleging that CNB knew the "stolen" nature of the funds or from whom they had been "stolen"); *Back Story, LLC v. Amazon.com Servs., Inc.*, 2025 WL 1012304, at *12 (C.D. Cal. Jan. 30, 2025) (dismissing section 496 claim where plaintiff failed to allege that third-party reseller knew that products were obtained "via fraud by false pretenses"). The Complaint does not even attempt to surmount the "separate hurdle" of alleging that CNB acted with "criminal intent" to receive and hold funds it knew were stolen. *Tim Cross, LLC v. Associated Adjusters Network, Inc.*, 2023 WL 9005635, at *5 (C.D. Cal. Nov. 30, 2023); *see May*, 2024 WL 4681604, at *15 (plaintiff "does not plead that Google received and/or retained funds from May by 'careful planning and deliberation,' which is required for violating Penal Code § 496") (citing *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 362 (2022)).

## V. CONCLUSION

For the reasons set forth above, CNB requests that the Complaint be dismissed with prejudice. *Hobaica v. Seypet Resorts, LLC*, 2012 WL 6675129, at *11 (C.D. Cal. Dec. 17, 2012) (Snyder, J.) (denying leave to amend where amendment would be futile), *aff'd*, 593 F. App'x 719 (9th Cir. 2015); *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (affirming dismissal without leave to amend when claims were barred by the statute of limitations).

Respectfully submitted,

Dated: September 18, 2026

LATHAM & WATKINS LLP
Manuel A. Abascal
Joshua G. Hamilton
Lauren C. Barnett
Chandler S. Howell

By: /s/ Joshua G. Hamilton
Joshua G. Hamilton

*Attorneys for Defendant*
*City National Bank*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant City National Bank, certifies that this brief contains 6993 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 18, 2026 By: /s/ Joshua G. Hamilton
Joshua G. Hamilton